168    37
170    1   33

## ST. LOUIS BREWING ASSOCIATION, Appellant, v. CITY OF ST. LOUIS.

### Division Two, March 28, 1902.

1. **Condemnations:** DISMISSAL: COUNSEL FEES: CAUSE OF ACTION. A municipal corporation, with a charter which permits the city in a proceeding to condemn private property for a street, to discontinue it at any time prior to final judgment of condemnation and appropriation to pay for the improvement, and to dismiss upon the payment of costs, is not liable to the landowner for having begun such proceedings, for fees of attorneys and of expert witnesses and other like expenses incurred by him in defending such proceeding and protecting his property rights, save when it is alleged and made to appear that such proceeding was "needlessly, wrongfully and vexatiously protracted and delayed by the city against the protest of the landowner, when it is in the power of the city to dismiss it and avoid the injury to him." (Following Simpson v. Kansas City, 111 Mo. 237, and distinguishing St. Louis Railroad v. Southern Railroad, 138 Mo. 591.)

2. ——: ——: ——: ——: RAILROAD CHARTERS DISTINGUISHED. In a suit to recover counsel fees and other necessary expenses incurred in protecting one's property interests as a landowner in a condemnation proceeding which has been dismissed and discontinued, a distinction is to be noted between such a proceed-

ing by a municipal corporation and a like proceeding by a railroad, the distinction being traceable to the difference in their respective charters.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

AFFIRMED.

*Kehr & Tittmann* for appellant.

(1)   When the condemning corporation, after having put the landowner to expense, abandons the proceeding, the latter may recover all costs, expenses and damages occasioned by the proceeding. Railroad v. Railroad, 138 Mo. 591; Railroad v. Lackland, 25 Mo. 515; Railroad v. Reynal, 25 Mo. 534; St. Joseph v. Hamilton, 43 Mo. 281; Leisse v. Railroad, 2 Mo. App. 105; s. c., 72 Mo. 561; Gibbons v. Railroad, 40 Mo. App. 146; Lohse & M. v. Railroad, 44 Mo. App. 645; St. Louis v. Meintz, 107 Mo. 611; Simpson v. Kansas City, 111 Mo. 248; Owen v. Springfield, 83 Mo. App. 557; Gear v. Railroad, 20 Iowa 529; Graff v. Mayor of Balt., 10 Md. 544; State ex rel. v. Graves, 19 Md. 351; Black v. Mayor of Balt., 50 Md. 241; Johnson v. Sutliff, 17 Neb. 423.   (2)   The right to dismiss condemnation proceedings is not an unconditional right.   Equitable terms may be imposed.   Matter of Waverly Waterworks, 85 N. Y. 478; Moravian Seminary v. Bethlehem, 153 Pa. St. 583; Water Coms. of Jersey City, 31 N. J. L. 72. (3)   The charter provision authorizing the city to dismiss a condemnation proceeding is simply declaratory of a right which the city has without it.   The city takes no new or additional right under the charter and its right to dismiss is subject to the general rule of decision in this State requiring it to reimburse the landowner.   City Charter, sec. 9, art. 6; Railroad v. Railroad, 138 Mo. 597.

*B. Schnurmacher* for respondent.

(1) (a) Under its charter the city of St. Louis may dismiss and withdraw legal proceedings for the condemnation of private property for public use, and may abandon a contemplated public improvement at any time before final judgment, on payment of costs. Charter of St. Louis, art. 6, sec. 9. And may even discontinue such proceedings after final judgment by failure to make the necessary appropriation to pay the damages awarded. Silvester v. St. Louis, 65 S. W. 278; Charter, art. 6, sec. 10. (b) The "costs" for which the city becomes liable in the event of discontinuance are the taxable court costs, and not fees of counsel, experts or other demands for the preparation of the case. St. Louis v. Meintz, 107 Mo. 611. (c) The only other terms imposed upon the city in consequence of a discontinuance of such condemnation proceedings, resulting from a voluntary dismissal or a failure to make the necessary appropriation, is a denial of the right to reinstate such proceedings for a period of ten years thereafter. Charter of St. Louis, art. 6. secs. 9 and 10. (2) Under its charter provisions the city of St. Louis, upon a discontinuance of condemnation proceedings, the same not having been unnecessarily protracted or wrongfully delayed, is liable only for taxable court costs, and for none other. Simpson v. Kansas City, 111 Mo. 237; Railroad v. Railroad, 138 Mo. 591; State ex rel. v. Hug, 44 Mo. 116; Whyte v. Kansas City, 22 Mo. App. 409; Bergman v. Railroad, 21 Minn. 533; Stevens v. Borough of Danbury, 53 Conn. 20; Feiten v. Milwaukee, 47 Wis. 496; Lewis on Eminent Domain, sec. 658; Dillon's Mun. Corp. (4 Ed.), secs. 609, 610; Mills on Eminent Domain, sec. 313.

GANTT, J.—This is an appeal by the plaintiff from a judgment of the circuit court of the city of St. Louis sustaining a demurrer to its petition and rendering final judgment for defendant.

The petition, omitting caption, is in these words:

"The plaintiff states that it now is, and on the several days and dates hereinafter mentioned was, a corporation duly created and existing under and by virtue of the laws of the State of Missouri, and that the defendant is, and on said several days was, a municipal corporation, likewise created under the laws of said State. That on said several days and dates plaintiff was and still is the owner and in possession of the following described real estate, being, lying and situate in the city of St. Louis, Missouri, to-wit: The whole of city block No. 460 North, bounded north by Market street, east by Seventeenth street, south by Walnut street, and west by Eighteenth street. That the said real estate is and was improved, there being erected thereon large, costly and valuable improvements constituting plaintiff's brewery plant known as the 'Excelsior Brewery.' That said premises aforesaid have a front of two hundred and ninety-five feet and three inches on the south line of Market street, by a depth southwardly, along the east line of Eighteenth street to the north line of Walnut street, of three hundred and twelve feet and three inches. That said Eighteenth street, abutting plaintiff's said property on the west, between Market and Walnut streets, is and at said times was a street sixty feet wide. That by ordinance No. 17799, which went into effect on or about February 16, 1895, entitled 'An ordinance to widen Eighteenth street between Clark avenue and Pine streets,' and which said ordinance was duly passed by the municipal assembly of the city of St. Louis, said municipal assembly ordained that said Eighteenth street should be widened between said Clark avenue and Pine street so as to make the same a street one hundred feet wide, and established the east line of said Eighteenth street as widened to be along the front of plaintiff's said property on said street, between Market and Walnut streets, forty feet east of the east line of the said then existing Eighteenth street, and said assembly did further, in and by said ordinance, authorize

and instruct the city counselor of said city to cause said Eighteenth street to be so widened in accordance with law. That thereafter, to-wit, on March 27, 1895, and under authority of said ordinance, the defendant, the city of St. Louis, instituted its suit in the circuit court of St. Louis, Missouri, against the owners of the real estate and property abutting and adjoining said Eighteenth street on the east, for the purpose of widening said street as prescribed in said ordinance, and of condemning sufficient of the property of said property-owners to cause said street to be so widened; that the plaintiff herein as one of the owners of such property was made a party defendant in said suit; that it was duly served with summons therein and duly appeared to said suit. And plaintiff alleges that in and by said suit said defendant sought and undertook to condemn for the purpose of widening said Eighteenth street as aforesaid, a strip of ground, together with the buildings and improvements thereon, having a front of forty feet on the south line of Market street, by a depth southwardly to Walnut street of three hundred and twelve feet and three inches, and being the western forty feet of plaintiff's said real estate hereinbefore described. And plaintiff states that said suit aforesaid remained pending in said circuit court and that divers and sundry proceedings were had therein from time to time, from the date of the institution of said suit, to-wit, March 27, 1895, to April 19, 1899, on which last mentioned day the defendant, the city of St. Louis, voluntarily dismissed its said suit, the said municipal assembly of said city, having by ordinance No. 19786, duly passed by said assembly, repealed said first named ordinance, and instructed said city counselor to dismiss said proceedings. And plaintiff states that from and after the date of the institution of said suit aforesaid and during its pendency and until the date of its dismissal aforesaid, the plaintiff was compelled to incur and did incur large expenses for counsel fees and for expert witnesses and other expenses, in making defense against the appropriation of its said property aforesaid for said purposes

aforesaid and in the protection of its property rights and intersts involved in said proceedings, to the amount of $8,103.82, all of which were reasonable and proper expenses for such purposes. Wherefore plaintiff prays judgment against said defendant for said sum of $8,103.82."

At the return term of the court, the defendant filed the following demurrer to said petition:

"Now comes the defendant and demurs to the petition of plaintiff herein, and for grounds of such demurrer, avers that said petition does not state facts sufficient to constitute a cause of action against this defendant."

The court sustained the demurrer, and plaintiff declining to plead further, the court on January 25, 1900, rendered judgment for the defendant thereon, to which action of the court in sustaining the demurrer and in entering final judgment thereon for the defendant the plaintiff then and there excepted.

On January 27, 1900, plaintiff filed its affidavit and bond for appeal, and the court on said day allowed plaintiff an appeal in said cause to the Supreme Court of the State..

The action of the circuit court in sustaining defendant's demurrer presents the only question for solution. The charter provisions bearing on the case are as follows:

Article 6 of the charter contains the authority to make public improvements and for opening and widening streets and prescribes the method of condemning private property for such purposes. Section 9 of that article provides: "Upon the report of said commissioners being filed in the circuit court, or with the clerk thereof, the court shall give the city of St. Louis, upon application of the city counselor, reasonable time to report the result of the same to the assembly for its information and approval, during which time no action will be had in or by said court upon said report; and the city of St. Louis shall have the right, at any time before the final confirmation of said report, to dismiss and withdraw said proceedings on the payment of the costs thereof. Should the city dismiss or with-

draw any proceedings for condemnation after the report of the commissioners has been filed, no action for such condemnation shall be had for a period of ten years next thereafter, unless upon the petition of the owners of three-quarters of the property fronting on the line of the proposed improvement, or upon payment by the city of the entire value and damages, such as aforesaid."

By section 10 of the same article it is further provided that "any failure of the assembly within the time above stated to make such appropriation (for the damages assessed) shall operate as a dismissal of such proceedings and no future action for such condemnation shall be commenced for a period of ten years except as hereinbefore provided in case of a dismissal by the city."

It will be observed that it is nowhere stated in the petition that the condemnation proceedings to widen Eighteenth street were in any way unreasonably and vexatiously protracted or delayed.

The propositions raised by the demurrer can not be said to be new or unusual in this State and we shall not find it necessary to examine authorities in other jurisdictions to any great extent. Indeed it may be said that the counsel for the city relies, to sustain his demurrer, upon the decision of this court in Simpson v. Kansas City, 111 Mo. 237, and the contention of plaintiff to reverse the judgment is largely predicated upon Railroad v. Railroad, 138 Mo. 591, and the reasoning of that case.

Both of those decisions were written by Judge MACFAR-LANE, and it is clear by his citation of the Simpson case in the last mentioned case, that he did not consider that he was announcing a contrary doctrine in the one to that which he had promulgated in the other.

In the Simpson case, Kansas City, as St. Louis did in this, instituted proceedings to widen one of its streets, which proceedings it afterwards abandoned, and thereupon Simpson

brought his action against the city to recover the damages which he alleged he had sustained by being compelled to employ counsel to look after and protect his interest, and that by reason of said proceedings he was unable to rent his property or to sell it for anything like its real value, etc. The petition then made the following averments:

"The plaintiffs say further that at the time of the passage of said ordinance to condemn plaintiffs' said property, in November, 1879, it was not necessary to take said property for public use as a part of said Twelfth street, and it was not necessary to so take said property at any time while said proceedings were pending; and said proceedings to condemn the plaintiffs' said property as aforesaid were needlessly and wrongfully begun by the defendant, and they were needlessly, wrongfully and vexatiously continued by the defendant, against the protest of these plaintiffs, and said proceedings were unnecessarily delayed and kept pending over said property of the plaintiffs during said long period of time, during all of which time said proceedings were entirely under the control of the defendant, and could have been dismissed by it at any time; all to the great damage of the plaintiffs as above set forth. Wherefore, plaintiffs say that by reason of the matters and things herein stated they have been damaged in the sum of five thousand dollars, for which sum, with costs of this suit, they ask judgment against the defendant."

In that case it was ruled that, in the absence of statutory regulations to the contrary, a municipal corporation has the right to discontinue proceedings for condemning property for public uses, and to abandon such public improvements at any time before a final award in the nature of a final judgment in favor of the property-owner, and that the Kansas City charter fully recognized that right. It was also ruled that an action by the landowner could not be maintained on the allegation that the condemnation proceedings were needlessly begun, the court saying, "The necessity, expediency and propriety of ex-

ercising the right of eminent domain, either by the State, or by the corporate bodies to which the right has been delegated, are questions essentially political in their nature and not judicial." Again it was held that the voluntary discontinuance of the proceedings was not evidence of a wrongful commencement. Finally, it was decided that the only allegation in the petition in that case upon which the action could be maintained was the averment that the proceedings "were needlessly, wrongfully and vexatiously continued by the defendant against the protest of the plaintiffs, and said proceedings were unnecessarily delayed and kept pending over said property of the plaintiff during said long period of time," to-wit, nine years.

Turning now to the case of St. Louis Railroad v. Southern Railroad, 138 Mo. 596, it will be seen that the learned judge based his opinion upon the decision in Lackland v. Railroad, 25 Mo. 515, in which this court held that in proceedings for condemnation by a railroad company, the railroad might abandon the route selected and dismiss its proceedings up to the period of commencing work, and even beyond that in certain contingencies referred to in the statute, and at all events up to the final judgment of condemnation, but that when it did discontinue its proceedings "all the costs and expenses of the landowners should be paid by the company," which would embrace all the costs of the case and counsel fees both in the circuit and Supreme Court, and this was based upon the language of the charter that, "in all such cases the court shall adjudge the costs of the proceeding, *according to equity.*"

Accordingly, upon a comparison of the statute upon which the proceeding in St. Louis Railroad v. Southern Railroad, 138 Mo. 591, was based, with the charter of the railroad in the Lackland case, the court reluctantly came to the conclusion, in view of the long line of decisions based upon Lackland v. Railroad, that there was not sufficient evidence of a change in the intention of the Legislature (the statute requiring that all costs shall be adjudged by the court *"as it shall deem to be*

*just"),* to require a different ruling, and, hence, allowed counsel fees in that case—but that the court did not consider the railroad act as applying to a municipal corporation having the absolute right to dismiss its proceedings, we think is obvious— not only because the court says it is unwilling in the Simpson case to apply the rule in Leisse v. Railroad (2 Mo. App. 105), 72 Mo. 561, to a city having the right under its charter to discontinue its proceedings on the payment of costs, but because it is evident the court was considering the Simpson case when it decided Southern Railroad v. St. Louis Railroad, and in no way disapproved the former, but drew a distinction between a private corporation invoking the power of eminent domain for private gain, and a municipal corporation acting solely in behalf of the public interest, and because the court approves the decision in St. Louis v. Meintz, 107 Mo. 611, in which this court had reviewed at length the Lackland and Leisse cases, and construed a charter provision of the city of St. Louis as to the allowance of "costs," and held that they did not include counsel fees, saying, "The question here is whether the words of the charter include attorneys' fees, charges of expert witnesses, and expenses in developing the character and extent of the clays, and we are clearly of the opinion that they do not. . . . Attorney's fees can not be collected as costs in a cause save where there is an express statute to that effect. [Waters v. Waters, 49 Mo. 385.]" Taking all the cases of this court into consideration, we think the distinction is maintained between a proceeding for condemnation by a municipal corporation, and a railroad corporation, growing out of the difference in the charters of the former and the latter, and that a municipal corporation with a charter like that of Kansas City and St. Louis which permits the city to discontinue at any time prior to the final judgment and appropriation to pay for the improvement, to dismiss upon the payment of costs, is not liable for counsel fees, and fees of expert witnesses, save when, as in the Simpson case, it is alleged and made to appear that

such proceedings "are needlessly, wrongfully and vexatiously continued by the city against the protest of the landowner, when it is in the power of the city to dismiss them and avoid the injury to him." There is no such averment in the petition we are considering, and no facts stated tantamount thereto.

Our conclusion is that the circuit court committed no error in holding the petition insufficient and its judgment is affirmed.

*Sherwood, P. J.*, concurs.